_____ FILED    _____ ENTERED
_____ LOGGED   _____ RECEIVED

FEB 0 4 2020

BY        BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND        DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEVIN SMALLWOOD and
TONI MCLAURIN,

      Plaintiffs,

v.

FABIEN LARONDE,

      Defendant.

_____/

Case No. 17-cv-03469

## PRETRIAL ORDER

### A.  PLAINTIFFS' FACTUAL CLAIMS

On November 22, 2014, Plaintiff Devin Smallwood ("Mr. Smallwood") was leaving a barber shop at North Avenue and Collington in the City of Baltimore and was approaching a parked vehicle occupied by his girlfriend, Plaintiff Toni McLaurin ("Ms. McLaurin"), who was picking him up to go out for the night, when an unmarked vehicle began to pursue him. The vehicle was occupied by defendant Fabien Laronde and other Baltimore police officers who were not wearing police uniforms; they were in plain clothes. The officers jumped out of their vehicle and ran toward Mr. Smallwood who ran away in fear of being attacked or robbed, unaware that the men were police officers. The officers caught up with Mr. Smallwood and Defendant Laronde and two other officers slammed him to the

ground and began beating him with punches to the face, head and body, kicks to the body, and with a flashlight. Seeing her boyfriend being attacked, Ms. McLaurin exited her vehicle and at that point, defendant Laronde turned his attention to her, and immediately placed her in handcuffs, and cuffed her to another man who was also just a bystander, and forced them to sit on the sidewalk for some time while they tore through Ms. McLaurin's vehicle, ripping out the car radio and tearing up the carpets. Ms. McLaurin had just had surgery on her stomach approximately a week prior to this incident, and being forced to be handcuffed to another individual and ordered to sit on the sidewalk for nearly an hour caused her to suffer severe pain in her abdomen. Ms. McLaurin continuously complained of the pain she was in to defendant Laronde and the other officers, all of whom ignored her pleas for help.

After the unlawful search and detainment of Ms. McLaurin and the brutal beating of Mr. Smallwood, the officers eventually allowed Ms. McLaurin to leave and took Mr. Smallwood to Baltimore City Central Booking, which refused to keep him due to the severity of his injuries. Mr. Smallwood was injured so severely that he required hospital treatment before he could be taken to jail. The officers' beating of Mr. Smallwood and unlawful search and detention of Ms. McLaurin were so unjustified and extreme that their conduct was subject to internal investigation, and defendant Laronde was terminated from the Baltimore Police Department. The officers ignored Plaintiffs' clear physical distress, continued to brutally assault Mr.

Smallwood without justification, and continued to unlawfully detain Ms. McLaurin in such a manner that caused great pain, and continued to unlawfully search her vehicle. Defendant Laronde had no justifiable excuse or reason to assault Mr. Smallwood, punch him in the face, or throw/slam him to the ground, or to unlawfully detain Ms. McLaurin and search her vehicle.

### PLAINTIFFS' LEGAL THEORIES:

i.   Defendant Laronde violated Plaintiffs' Fourth Amendment right to be free from arrest/detention without probable cause.

ii.  Defendant Laronde violated Plaintiffs' Fourth Amendment right to be free from excessive force.

iii. Defendant Laronde violated Plaintiff McLaurin's Fourth Amendment right to be free from an unlawful search of her vehicle without probable cause.

### B.   DEFENDANT'S FACTUAL CLAIMS

On November 22, 2014, at approximately 10:30 p.m., this Defendant, along with Detectives Valentine Nagovich and Antonio Saunders, was in the area of North and Collington Avenue, a known open-air drug market. This Defendant and fellow officers were investigating Controlled Danger Substance ("CDS") activity, and were operating out of an unmarked police vehicle, wearing a modified police uniform with "POLICE" clearly marked on the front and back of their vests. This Defendant and the other officers observed Plaintiff, Devin Smallwood, engage in a hand-to-hand

transaction, where he passed small suspicious objects off to another African-American male. Based on these observations, this Defendant and fellow officers believed that Plaintiff engaged in a narcotics transaction.   At this point, this Defendant and fellow officers pulled up to the corner where Plaintiff was located to further investigate.   While still in the unmarked vehicle, this Defendant and fellow officers approached the Plaintiff, who turned his back and placed several of the suspicious objects into his mouth and attempted to drink from a bottle of Amsterdam vodka to swallow the objects.   Plaintiff choked on the vodka and spit the objects out onto the ground and attempted to flee, which prompted Det. Nagovich and Det. Saunders to exit the vehicle and commence pursuit. This Defendant was able to successfully detain Plaintiff, who proceeded to resist and yell for help, saying that he can't go back to the other individuals with him on the corner. This Defendant and fellow officers placed Plaintiff under arrest.   At this point, the group of bystanders became hostile towards this Defendant and fellow officers, which prompted the use of strong verbal commands and unholstering tasers in order to keep them from interfering with the investigation.   To control the crime scene and gather evidence before the bystanders could destroy or remove any of the suspicious items, some individuals were detained by uniformed officers who had arrived on scene to assist with crowd-control.   Det. Saunders returned to the location where Plaintiff had spit out the objects and recovered ten zip-lock bags of suspected cocaine. While in the

Case 1:17-cv-03469-SAG   Document 61   Filed 02/04/20   Page 5 of 11

custody of this Defendant and still in handcuffs, Plaintiff managed to break loose and began running in the middle of the street, dodging oncoming traffic on North Avenue. This Defendant pursued Plaintiff on foot and successfully regained custody over Plaintiff at the corner of North Avenue and Collington.  This Defendant escorted Plaintiff to the back of the patrol vehicle and observed Plaintiff making sudden movements toward the rear of his pants. This Defendant realized that Plaintiff was attempting to "dump" additional paraphernalia or illegal substances from his person. Consequently, this Defendant pulled Plaintiff back out of the vehicle, conducted a body search, and recovered a plastic bag containing a small amount of suspected marijuana. Plaintiff was then returned to the backseat of the patrol vehicle to wait for a transport vehicle to arrive. Once the transport vehicle arrived, this Defendant began to approach the driver to provide paperwork, when Plaintiff managed to open the door, exit the vehicle, and flee for a second time, running across North Avenue, once again dodging traffic. This Defendant and Det. Saunders pursued Plaintiff and observed him fall three times while attempting to escape. By the Plaintiff's third fall, he landed against a fence in the alley, which is approximately where this Defendant and Det. Saunders, along with other unidentified officers, were able regain custody of Plaintiff.  At this time, this Defendant noticed that Plaintiff had a small abrasion to the left of his eye and immediately radioed for an ambulance to treat Plaintiff at the Eastern District.

Plaintiff was subsequently taken to the Eastern District, debriefed, and Mirandized. Plaintiff voluntarily spoke with this Defendant, advising that he had recently gotten out of jail and did not want to return. Plaintiff also mentioned that he had a young child at home, who he wants to keep off of the streets. Plaintiff clearly stated that he did not need any medical attention and just wanted to return home. This Defendant advised Plaintiff of the abrasion to his face and informed him that medics would be arriving to treat him. Plaintiff again advised that he did not need to go to the hospital and provided a written statement confirming that he had fallen down while running from the police. During this time, Det. Saunders was submitting a handgun into evidence from a prior arrest earlier that day. Upon noticing the handgun, Plaintiff became incensed, yelling something to the effect of you're not gonna put that gun on me. However, none of the officers or this Defendant indicated or implied that would happen. Afterwards, Plaintiff spoke with detectives of the District Detective Unit ("DDU") regarding violent crime in the area and was transported to Central Booking Intake Facility ("CBIF"). Later that evening and after this Defendant's shift was over, this Defendant was informed that Plaintiff was rejected from CBIF and was being taken back to the Eastern District. This Defendant responded to that location and took custody of Plaintiff around 2:30 a.m. Plaintiff advised this Defendant that he did not want to go to CBIF and claimed to have valuable information regarding violence and narcotics in the area, which he offered

to disclose. Based on the conversation and verified sources, this Defendant believed Plaintiff to be a credible source of information and made a decision to release Plaintiff on an agreement that he would serve as a "Confidential Informant." This Defendant further advised that Plaintiff could be charged at a later date if he did not follow through with his end of the deal. Plaintiff was issued a field interview receipt #5062603, detailing the incident as a CDS violation and involuntary detention, and Detective Saunders submitted the evidence to the department's Evidence Control Unit ("ECU"). Plaintiff failed to follow through with his promise to provide criminal information, and this Defendant subsequently submitted an application for an arrest warrant.

## DEFENDANT'S LEGAL THEORIES:

i.   Defendant Laronde acted with probable cause and therefore did not violate Plaintiffs' Fourth Amendment right to be free from arrest/detention without probable cause.

ii.  Defendant Laronde did not exercise excessive force and therefore did not violate Plaintiffs' Fourth Amendment right to be free from excessive force.

iii. Defendant Laronde did not conduct an unlawful search of Plaintiff McLaurin's vehicle in violation of her Fourth Amendment right to be free from an unlawful search of her without probable cause.

### C.  COUNTERCLAIMS, CROSS CLAIMS, THIRD-PARTY CLAIMS

No counterclaims, cross claims or third-party claims exist in relation to this case.

### D.  AMENDMENTS REQUIRED OF THE PLEADINGS

The case caption should be amended to reflect that the Defendant's name is in fact FABIEN LARONDE, not LARONDE FABIEN.

### E.  CLAIMS TO BE ABANDONDED

Plaintiffs *Monell* claim (Count I) under Municipality Liability was dismissed (ECF 12) and is therefore abandoned. Plaintiffs also abandon their claims for Supervisory Liability/Failure to Train and Failure to Intervene as defendant Fabien Laronde is the only remaining defendant in this action.

### F.  STIPULATIONS OF FACT

i.  At all times relevant to this case, defendant Laronde was acting under color of law as a Baltimore Police Officer.

### G.  DETAILS OF DAMAGES AND RELIEF SOUGHT

i.  Compensatory damages in an amount to be determined by the jury;

ii.  Punitive damages in an amount to be determined by a jury such that it adequately punishes the actors and adequately sends a message to those similarly situated.

## H.   EXHIBITS

Plaintiffs may introduce the Baltimore Police Incident Report related to the incident that is the subject of this action, and/or the CCTV video footage that captured the incident, as exhibits, however, would only introduce them for impeachment purposes, only.

The following exhibits will be offered by **Defendant**:

| Exhibit No. | Description | Plaintiffs' Objection |
|---|---|---|
| 1 | CCTV video | Foundation |
| 2 | Incident Report (Laronde 0001-0003) | Hearsay |
| 3 | CAD Report (Laronde 0007-0008) | Hearsay |
| 4 | Crime Lab Photos (Laronde 0019-0037) | Relevance and Hearsay |
| 5 | Dispatch Recording | Hearsay |
| 6 | Smallwood Letter (Laronde 0113) | Relevance |

## I.   WITNESSES

### PLAINTIFFS' WITNESSES:

### i.   Will Call

Fabien Laronde
c/o Defendants' Counsel

### ii.   May Call

Toni McLaurin, Plaintiff
c/o Plaintiffs' Counsel

Devin Smallwood, Plaintiff
c/o Plaintiffs' Counsel

## DEFENDANT'S WITNESSES:

### i.   Will Call

Fabien Laronde
c/o Defendants' Counsel

### ii.   May Call

Detective Antonio Saunders
c/o Baltimore Police Department

Detective Valentine Nagovich
c/o Baltimore Police Department

Officer William Smith
c/o Baltimore Police Department

Officer Daniel Gerand
c/o Baltimore Police Department

Officer Steven Waldman
c/o Baltimore Police Department

Officer Kiam Prester
c/o Baltimore Police Department

Detective Towanda Jackson
c/o Baltimore Police Department

Officer Kim Tonsch
c/o Baltimore Police Department

Officer Joshua Fidler
c/o Baltimore Police Department

Lieutenant Joel Fried
c/o Baltimore Police Department

## J.    **EXPERTS**

No experts have been retained by either Plaintiffs or Defendant in this matter.

## K.    **DEPOSITION TRANSCRIPTS**

**Plaintiffs:** Plaintiffs may use deposition transcripts for impeachment purposes, only. The deposition transcripts that may be used are those of Defendant Fabien Laronde, and Baltimore Police Officers Joshua Fidler, Joel Fried, Valentine Nagovich and Kim Tonsch.

**Defendant:** Defendant may use deposition or recorded statement transcripts for impeachment purposes, only. The deposition transcripts that may be used are those of Plaintiff Toni McLaurin and Plaintiff Devin Smallwood.

Dated: Feb. 4, 2020

_____

Hon. Stephanie A. Gallagher
UNITED STATES DISTRICT JUDGE


Respectfully Submitted,

Dated: January 3, 2020

By:    _/s/ Solomon M. Radner_
Solomon M. Radner
Attorney for Plaintiffs


By:    _/s/ Chaz Ball_
Chaz Ball
Attorney for Defendant