**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DEVIN SMALLWOOD**, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : **Civil Case No.:** 1:17-cv-3469-SAG |
| v. | : |
| | : |
| **FABIEN LARONDE**, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

On November 22, 2014, Baltimore Police Department Officer Fabien Laronde ("Defendant") took part in the detention of Toni McLaurin and the arrest of Devin Smallwood (collectively, "Plaintiffs"). Plaintiffs filed their Amended Complaint on November 29, 2017, alleging that Defendant violated their individual constitutional rights. ECF 6. A three-day jury trial concluded on February 20, 2020, with the jury finding in favor of Defendant on all counts. ECF 70, 72, 74. Presently pending is Plaintiffs' Motion for a New Trial pursuant to Federal Rules of Civil Procedure 59 and 60. ECF 75. Defendant opposed the Motion, ECF 76, and Plaintiffs filed a Reply, ECF 77. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be denied.

**I.   BACKGROUND**

This case arises from the detention of Plaintiff Toni McLaurin and the detention and subsequent arrest of Plaintiff Devin Smallwood on November 22, 2014. ECF 6 ¶ 11. At the time of this encounter, Defendant was acting under color of law as a police officer with the Baltimore City Police Department ("BPD"). ECF 61 at 8. Pursuant to 42 U.S.C. § 1983, Plaintiffs filed suit against Defendant, alleging that he violated their individual rights under the Fourth and Fourteenth

Amendments to the United States Constitution. *Id.* at 3. Specifically, Plaintiffs intended to prove at trial that Defendant violated (1) Plaintiff Smallwood's and Plaintiff McLaurin's right to be free from arrest or detention without probable cause, (2) Plaintiff Smallwood's and Plaintiff McLaurin's right to be free from excessive force, and (3) Plaintiff McLaurin's right to be free from unlawful search of her vehicle without probable cause. *Id.*

In the pretrial Order, Defendant and Plaintiffs presented drastically different versions of the events of November 22, 2014. Aside from the location of the encounter — the intersection of North Avenue and Collington Avenue in Baltimore — the parties agreed to very few details, and, accordingly, set out to prove their respective version of facts at trial. Namely, Plaintiffs alleged that Defendant beat Smallwood with "punches to the face, head and body, kicks to the body, and with a flashlight." *Id.* at 2. Moreover, Plaintiffs alleged that Defendant handcuffed McLaurin to a bystander, and forced her to sit on the sidewalk while he "ripp[ed] out the car radio and [tore] up the carpets" of her vehicle. *Id.* In contrast, Defendant denied any use of excessive force. Defendant stated that he was investigating drug activity in the area of North Avenue and Collington Avenue with two other police officers, and observed Smallwood engage in what appeared to be an illegal drug transaction. *Id.* at 4. While under arrest for the transaction, Smallwood attempted to flee from Defendant's custody two separate times and, on the second occasion, he fell against a fence in an alley. *Id.* at 5. Accordingly, Defendant contends that he used the force that was neccesary to effectuate the arrest.

At trial, Plaintiffs called two witnesses: Plaintiff McLaurin and Defendant Laronde. For his part, Defendant called two witnesses from the BPD: Detective Antonio Saunders and Officer Joshua Fidler. Detective Saunders, who was on patrol with Defendant on November 22, 2014, offered testimony that is most relevant to this Motion. As part of the direct examination, Detective

Saunders testified as to the validity of an Evidence Control Unit ("ECU) property slip. Plaintiffs' counsel did not object to the admission of the ECU slip into evidence, thus it was submitted to the jury as Exhibit 13. However, Plaintiffs' counsel cross-examined Detective Saunders about the fact that this version of the document, Exhibit 13, was not signed.

Additionally, Detective Saunders testified about recovering controlled substances from Smallwood at the scene of the arrest. He explained that the controlled substances were submitted to the BPD's ECU. On direct and cross-examination, Detective Saunders stated that the ECU should have in its possession: (1) the original, signed ECU property slip, (2) the controlled substances, and (3) a photograph of the controlled substances.

At the close of evidence, Plaintiffs' counsel made two motions, both of which are relevant here. First, he requested that the Court instruct the jury to draw an adverse inference about the photograph of the controlled substances. Because the physical photograph was not presented during trial, Plaintiffs believed that the Court should formally direct the jury to disregard it. Second, he requested that Exhibit 13, the unsigned ECU property slip, be stricken from the record entirely. The Court denied both motions. Counsel for Plaintiffs and counsel for Defendant delivered their closing arguments. After deliberating for less than an hour, the jury returned a verdict in favor of Defendant on all counts.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(A) provides, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—…after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." The decision of whether to grant a new trial "rests within the sound discretion of the trial court but such discretion must not be arbitrarily exercised." *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th

Cir. 1960). "On a Rule 59 motion, the district court must 'set aside the verdict and grant a new trial[] if … (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict..'" *Knussman v. Maryland*, 272 F.2d 625, 639 (4th Cir. 2001) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). And, "jury determinations of factual matters such as … the amount of compensatory damages will be reviewed by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Atlas Food Sys.*, 99 F.3d at 594. These first two prongs require a "comparison of the factual record and the verdict to determine their compatibility." *Id.*

Rule 59(e) allows for alteration or amendment to a court's ruling in three situations: (1) to accommodate an intervening change of law; (2) to account for new evidence, or (3) to correct a clear error of law or prevent manifest injustice. *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010).

In order to obtain relief under Rule 60(b), the moving party must demonstrate at least one of the grounds for relief listed in the rule. *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 412 (4th Cir. 2010). For instance, 60(b)(1) allows for relief from judgment in the instance of fraud, inadvertence, surprise, or excusable neglect. Fed. R Civ. P. 60(b)(1); *see also id.* This Rule also permits relief where "newly discovered evidence, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2), or where there is "misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3).

**III.  ANALYSIS**

Plaintiffs do not specify the particular provisions within Rule 59(e) and Rule 60(b) that they rely upon in seeking a new trial. In any event, Plaintiffs make two primary arguments, which the Court will address in turn.

**A.  Photograph of Controlled Substances**

First, Plaintiffs contend that a new trial is warranted, because the Court denied their request to provide the jury with an adverse instruction about the photograph of controlled substances. *See generally* ECF 75. Trial courts have broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 520 (D. Md. 2009). However, the inference "requires a showing that the party knew the evidence was relevant to some issue at trial and that his wilful conduct resulted in its loss or destruction." *Id.* (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). In *Thompson v. United States Housing and Urban Development*, this Court elucidated three requirements for an adverse instruction regarding spoliation of evidence:

> [B]ecause it is an extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

219 F.R.D. 93, 101 (D. Md. 2003) (citations omitted).

In this case, Plaintiffs have not demonstrated anything approaching wilful conduct on the part of Defendant, or anyone else for that matter, to destroy the photograph of controlled substances. Rather, the record shows that Plaintiffs never sought evidence related to the controlled

5

substances, which Defendant has consistently maintained were recovered at the scene of Smallwood's arrest. At Defendant's deposition on February 27, 2019, he alerted Plaintiffs' counsel to the likelihood that the controlled substances were located at BPD's ECU:

> Q: Okay. Now, what do you mean by you believed it to be a transaction? Did you recover the drugs?
>
> A: Yes.
>
> Q: From whom?
>
> A: From Mr. Smallwood [sic] spit them out after trying to swallow them.
>
> Q: Okay. And where are those drugs now?
>
> A: I don't know. Evidence or – I'm not sure. Like I said, I haven't been a cop for years.
>
> Q: Where are they typically kept?
>
> A: Evidence, ECU.
>
> Q: Okay. So they should still be there, right?
>
> A: Correct, unless they destroyed them at this point. It's been so long.

ECF 76-2, Exhibit B at 15:8 – 16:2 (Laronde Deposition).

Despite eliciting this deposition testimony, Plaintiffs' counsel did not seek to access BPD's ECU, and did not subpoena BPD for related evidence. In fact, Plaintiffs have not identified an instance prior to trial in which they sought — from any source — information related to the controlled substances. Instead, Plaintiffs first voiced dissatisfaction with the discovery turned over by Defendant after the close of evidence at trial. *See* ECF 76 at 2–3 (explaining that after receiving discovery, Plaintiffs never requested additional discovery from Defendant).

Plaintiffs cite *First Mariner Bank v. Resolution Law Group* for the proposition that "the law does not require evidence of intentional destruction for an adverse inference or limiting

instruction." ECF 75 at 9. However, an analogy to the conduct at issue in *First Mariner Bank* is inapposite. *See* 2013 WL 5797381 (D. Md. Oct. 24, 2013). Specifically, *First Mariner Bank* concerned claims of false advertising under the Lanham Act, as well as claims of defamation and unfair competition. *Id.* at *1. The defendant legal organization had mailed advertisements to First Mariner's customers, alleging that the bank was engaging in illegal banking practices. *Id.* When First Mariner sued in federal court, the defendant engaged in numerous obstructive and dilatory tactics, which impeded the plaintiff's ablility to conduct discovery. For example, First Mariner was dissatisfied with the defendants' responses to its first set of interrogatories and requests for production, and sought a Motion to Compel from the Court. *Id.* The Court not only granted the Motion, but also warned the defendants that "failure to produce all documents will subject [them] to additional sanctions." *Id.* Even so, the defendants' uncooperative conduct persisted. The defendants failed to abide by the Court's instructions, which prompted three separate hearings and at least three additional Orders directing them to comply with discovery requests. *See id.* at *2. In the posture of a motion for sanctions, the Court found that the plaintiff had suffered significant prejudice, as a result of the defendants' "evasiveness, delay and obfuscation." *Id.* at *10. For instance, First Mariner had to postpone conducting a deposition because the defendants had not yet provided written discovery. *Id.*

Here, Defendant's conduct, during and after discovery, is in no way comparable to that of the parties in *First Mariner Bank*. In fact, Plaintiffs' most significant allegation is the general assertion that Defendant "withheld throughout discovery" a photograph of the controlled substances. *See* ECF 75 at 10. However, Plaintiffs have provided no evidence that Defendants ever *possessed* the photograph in question, let alone that they purposefully withheld it during discovery. *See* ECF 76 at 2 ("All documents produced by BPD to [Defendant] were produced by [Defendant]

7

to Plaintiffs."). To the contrary, Defendant's deposition testimony made clear that evidence related to the controlled substances was, at some point, in the possession of BPD's ECU. In order to obtain such evidence, Plaintiffs should have served a subpoena on BPD. At the very least, Plaintiffs could have sought additional discovery from Defendant, in the form of evidence related to the current whereabouts of the controlled substances, the photograph, and the signed ECU property slip. Instead, Plaintiffs made no attempt to seek supplemental discovery, and waited until the close of evidence at trial to voice any displeasure with the discovery that had been provided.

Plaintiffs argue that they could not have anticipated that Detective Saunders would refer to a photograph of the controlled substances during his trial testimony. Incredibly, Plaintiffs equate the "surprise" that they experienced — as a result of Detective Saunders's testimony — with the impact that "surprise *witnesses*" have had in other cases. *See* ECF 75 at 10–11.  For example, in *Twigg v. Norton Co.*, an individual brought suit against a railroad company, *i.e.*, his former employer, for its alleged negligence during his employment. 894 F.2d 672, 673 (4th Cir. 1990). While he completed a welding job for the company, a grinding stone shattered, causing severe injury to his right hand. *Id.* Accordingly, the former employee alleged that the railroad company had supplied a defective grinding stone, which resulted in his injury. *Id.* at 674. However, he offered a new theory of liability during the trial. When confronted with an image of the equipment at issue, the plaintiff suggested that a second piece of equipment, the grinding machine, "lacked an extended protective guard." *Id.* The plaintiff advanced this new theory at trial despite the fact that he omitted it when he was previously asked, during deposition, to identify all defects in the grinding machine. *Id.* Indeed, even the plaintiff's counsel conceded that the trial testimony was not only a surprise, but a surprise that likely prejudiced the defendant. *Id.* at 674–75; *see also*

*Henley v. FMC Corp.*, 189 F.R.D. 340, 341 (S.D. W. Va. 1999) (offering previously undisclosed expert witness on the eve of submitting the case to the jury).

Plaintiffs should not have experienced any similar degree of surprise at this trial. While a photograph may not have been specifically mentioned during discovery, Defendant nonetheless told Plaintiffs' counsel that any evidence related to the controlled substances would be at the BPD's ECU.[1] Plaintiffs made no attempt before, during, or after the trial to acquire such material, whether in the form of the photograph or the drugs themselves. Moreover, the Court is not persuaded that Plaintiffs' case was weakened in any way because the photograph did not materialize at trial. Plaintiffs' counsel argued vigorously to the jury that Defendant had failed to produce the photograph and, as a consequence of this omission, that all should assume that it does not exist. By contrast, in *Henley*, the plaintiffs waited until the "waning days of a lengthy trial to spring a surprise witness" for the purpose of rebutting the pivotal testimony given by the defendant's expert witness. 189 F.R.D. at 349. Therefore, the defendant was deprived of adequate time to investigate the substance of entirely new expert testimony. *See id.* Here, Plaintiffs suffered no comparable amount of prejudice from the Court's refusal to give their preferred jury instruction, regarding an adverse inference. In cross examination of Detective Saunders, and in closing argument, Plaintiffs' counsel attempted to cast doubt about whether Smallwood had in fact participated in a drug transaction. Indeed, it is arguable that Plaintiffs actually *benefitted* from the missing photograph and, at the very least, were not harmed in a manner that would warrant the extraordinary remedy of nullifying the jury's verdict.

---

[1] Notably, Plaintiffs did not depose Detective Saunders, who could have provided information about the photograph during discovery.

### B. Admission of Exhibit 13

Next, Plaintiffs contend that the Court erred by admitting into evidence an unsigned property receipt, which itemized the drugs that were allegedly found in Smallwood's possession. *See* ECF 75 at 2. All parties agree that the property receipt does not have a signature. *See* ECF 76-1, Exhibit A. However, admitting the receipt into evidence was neither erroneous nor prejudicial to Plaintiffs' case.

At trial, Plaintiffs' counsel questioned Detective Saunders about the validity of the property slip, because it had not been signed by a BPD officer. Detective Saunders conceded that this version of the slip was missing a signature, and stated that the original slip should be at the ECU. As explained above, Plaintiffs made no effort to obtain, or even view, the original slip, which was purportedly in BPD's possession. Indeed, despite this line of questioning with Detective Saunders, Plaintiffs did not object to the authenticity of the property slip. Therefore, the Court admitted the slip into evidence as Exhibit 13. Given that Plaintiffs failed to make a timely objection, and had the opportunity to cross examine witnesses about what Plaintiffs perceived as an infirmity on the property slip, Plaintiffs have not met their burden to show that admitting Exhibit 13 into evidence warrants granting a new trial. *See CSX Transp., Inc. v. Peirce*, 974 F. Supp. 2d 927, 938 (N.D. W. Va. 2013) (denying request for new trial where the defendant failed to object to the admission of evidence at trial) (citing *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985) ("A motion for a new trial should not be granted, therefore, where the moving party has failed to timely object to the alleged impropriety giving rise to the motion.")).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a New Trial, ECF 75, is denied. A separate Order follows.

Dated: April 24, 2020 /s/
Stephanie A. Gallagher
United States District Judge